UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-60636-CIV-COHN-SELTZER

SIGNAL TECHNOLOGY, INC.,

        Plaintiff,

vs.

PENNSUMMIT TUBULAR, LLC,

        Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

**THIS CAUSE** is before the Court on Defendant's Motion to Dismiss Amended Complaint [DE 22]. The Court has considered all of the evidence admitted at the hearing conducted on October 14, 2009, the parties' arguments and legal memoranda, the record in this case, and is otherwise advised in the premises.

### I. BACKGROUND

This action arises out of two projects to install traffic signals in Broward County, Florida. Plaintiff Signal Technology, Inc. ("Signal") entered into contracts with third-parties to furnish labor and materials for the installation of traffic signals for two separate projects. In connection with these projects, Signal entered into contracts with Defendant PennSummit Tubular, LLC ("PennSummit") whereby Defendant agreed to furnish "mast arms," which are overhead structures used in the construction of traffic signals. Plaintiff alleges that the mast arms provided by Defendant were defective and the Complaint brings claims for breach of contract, breach of the implied warranties of merchantability and fitness for a particular purpose, and indemnification.

Defendant moved to dismiss Plaintiff's Amended Complaint on two alternative grounds: (1) under Fed. R. Civ. P. 12(b)(3) for improper venue, pursuant to a forum selection clause contained in PennSummit's standard "Terms and Conditions;" and (2) under Fed. R. Civ. P. 12(b)(6) for failure to state a claim based on the warranty clauses of the Terms and Conditions. The central issue is whether the Terms and Conditions are part of the parties' agreement. Defendant takes the position that they are. Plaintiff argues that "the so-called Terms and Conditions were not part of PennSummit's quotes or the purchase orders between Signal and PennSummit on either of the projects." DE 29 at 3.

## II. LEGAL STANDARD

In the context of a Rule 12(b)(3) motion to dismiss for improper venue "the court may consider matters outside the pleadings such as affidavit testimony, 'particularly when the motion is predicated upon key issues of fact.'" Wai v. Rainbow Holdings, 315 F.Supp.2d 1261, 1268 (S.D. Fla. 2004) (quoting Webster v. Royal Caribbean Cruises, Ltd., 124 F.Supp.2d 1317, 1320 (S.D. Fla. 2000)). When venue is challenged by a Rule 12(b)(3) motion, the plaintiff has the burden of showing that venue in the forum is proper. Wai, 315 F.Supp.2d at 1268. A court "must accept all allegations of the complaint as true, unless contradicted by the defendants' affidavits, and when an allegation is so challenged the court may examine facts outside of the complaint to determine whether venue is proper." Id. A court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff. Id. "'If the court chooses to rely on pleadings and affidavits, the plaintiff need only make a *prima facie* showing of [venue]. But if the court holds an evidentiary hearing . . . the plaintiff must demonstrate

2

[venue] by a preponderance of the evidence.'" Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 355 (2d Cir. 2005) (quoting CutCo Indus. v. Naughton, 806 F.2d 361, 364-65 (2d Cir. 1986)).

### III. EVIDENTIARY HEARING

There is no dispute that, at the inception of each of the two relevant transactions, Defendant provided a Quote and Plaintiff provided a Purchase Order. Defendant's Quotes and Plaintiff's Purchase Orders were admitted into evidence. The Quotes contain several "NOTES" at the bottom of the one-page document, such as "ALLOW 12-14 WEEKS FOR SHIPMENT AFTER ORDER RELEASE." None of these terms are at issue in Defendant's Motion to Dismiss. Defendant's Quotes do not reference the Terms and Conditions which Defendant asserts are part of the parties' agreement. Plaintiff's Purchase Orders also contain a number of "Notes," none of which are material to the dispute. Neither document conditions acceptance on assent to additional terms outside of the Quote and the Purchase Order.

Jeffrey M. Kleiss, Executive Vice President of Signal, testified that he oversaw receipt of the Defendant's Quotes for the two projects at issue in this litigation. Mr. Kleiss received the Powerline Quote on January 26, 2004 and he received the Oakland Park Quote on April 25, 2005. Mr. Kleiss testified that he did not receive PennSummit's Terms and Connections at the time he received these two quotes. As discussed in more detail below, Mr. Kleiss stated that the first time he saw PennSummit's Terms and Conditions was in December of 2006.

Defendant did not provide Plaintiff with Quotes directly. Rather they were transmitted by Grace Panelo, who works for Power & Lighting Systems, Inc. Ms.

Panelo could not recall whether she sent PennSummit's Terms and Conditions contemporaneously with the Quotes related to the transactions at issue in this lawsuit. The most Ms. Panelo could testify to was that she "probably" sent PennSummit's Terms and Conditions to Signal when she sent a "general fax" including PennSummit's Terms and Conditions to all regular customers of Power & Lighting Systems, Inc. Ms. Panelo, however, could not remember when this would have occurred and she produced no records to support this testimony.

Plaintiff also took the testimony of Eric Shultze and John P. Coyne. These individuals work for third-party companies which conduct regular business with PennSummit. Both individuals testified that despite receiving numerous Quotes from PennSummit, neither was furnished with PennSummit's Terms and Conditions.

There is no dispute that Mr. Kleiss received PennSummit's Terms and Conditions on December 22, 2006. Sometime after Signal received the mast arms, the paint began peeling from the materials. Signal contacted PennSummit about this issue and PennSummit hired Ed French Painting, Inc. to repair the mast arms. On December 12, 2006, Mr. Kleiss attended a progress meeting regarding the repair work on the mast arms. Sara Duffoo, the Construction Engineering Inspector for the Florida Department of Transportation, was also in attendance and she requested that Mr. Kleiss obtain a copy of the "paint warranty." Thereafter, Mr. Kleiss transmitted this request to Ms. Panelo and he received a copy of PennSummit's Terms and Conditions which include a one-year warranty.

Defendants admitted several documents into evidence that show Mr. Kleiss relying on the one-year warranty. For example, on March 3, 2007, Mr. Kleiss sent an

email attaching the Terms and Conditions and stating: "The attached is PennSummit Tubular's Terms and Conditions which includes the Warranty information on the mast arms we supplied on the Oakland Park Blvd Project." In addition, right before the filing of this action, Mr. Kleiss sent a "demand letter" to PennSummit on March 5, 2009. In that letter, Mr. Kleiss, referring to the Terms and Conditions, wrote: "The warranty clearly states that PennSummit will replace all defective parts. PennSummit, per the warranty, is responsible for the replacement for all the [defective] mast arms on the above-mentioned project." There is no evidence that Mr. Kleiss or any other individual from Signal ever objected to the one-year warranty or PennSummit's Terms and Conditions.

All evidence showing Signal's representations regarding PennSummit's Terms and Conditions relates to the warranty information contained therein. There was no evidence admitted demonstrating that Signal ever consented to or even acknowledged the forum-selection clause contained in the Terms and Conditions.

## IV. ANALYSIS

This case is not a typical "battle of the forms" dispute under the Uniform Commercial Code. Defendant provided Plaintiff with Quotes for the two projects at issue. Without materially altering the terms of Defendant's Quotes, Plaintiff provided Defendant with Purchase Orders for Defendant's goods. Defendant delivered the goods and Plaintiff accepted them.

Plaintiff's Purchase Orders did not state "terms additional to or different from those offered or agreed upon" and in neither document was acceptance "expressly made conditional on assent to the additional or different terms." Fla. Stat. § 672.207(1).

In addition, there is no credible evidence before this Court to establish that Plaintiff received the Terms and Conditions prior to December 22, 2006, which was well after the delivery of the goods for both projects. Accordingly, there is no need to resort to Fla. Stat. § 672.207. Based on the evidence currently on record, the Court concludes that the Terms and Conditions were not part of the parties' original agreement.

"A written contract can be modified by subsequent oral agreement between the parties or by the parties' course of dealing." Kiwanis Club of Little Havana, Inc. v. de Kalafe, 723 So.2d 838, 841 (Fla. 3d DCA 1998); see also Pathway Fin. v. Miami Int'l Realty Co., 588 So.2d 1000, 1005 (Fla. 3d DCA 1991); Pan Am. Eng'g Co., Inc. v. Poncho's Constr. Co., 387 So.2d 1052, 1053 (Fla. 5th DCA 1980); Fletcher v. Laguna Vista Corp., 275 So.2d 579 (Fla. 1st DCA 1973). There is no evidence before this Court to establish that the parties' contract was modified to include the forum-selection clause contained in PennSummit's Terms and Conditions. Therefore, the Court finds that venue is proper in this forum. In addition, "[w]hether a written contract has been modified by subsequent oral agreement or by course of dealing is a question of fact for the jury." Kiwanis Club, 723 So.2d at 841 (citing Halbert v. First Realty Serv., Inc., 504 So.2d 431 (Fla. 1st DCA 1987)). Accordingly, the Court will also deny the remaining argument contained in Defendant's Motion to Dismiss.

## V. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss [DE 22] is **DENIED**.
2. The Court will enter a separate Order resetting the trial date and revising the Scheduling Order [DE 14]

3.  Defendant's Motion for Stay of Discovery [DE 6] is **DENIED as moot**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 16th day of October, 2009.

									_____
									JAMES I. COHN
									United States District Judge

Copies provided to:

Counsel of record via CM/ECF